UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHASE MANHATTAN BANK
USA, N.A.,

    Plaintiff,

vs.                                                                          CASE NO. 3:04-cv-1205-20-HTS

NATIONAL ARBITRATION
COUNCIL, INC.;
CHARLES S. MORGAN, and
NATIONAL ARBITRATION
SPECIALISTS, INC.,

    Defendants.

_____/

**PLAINTIFF, CHASE MANHATTAN BANK USA, N.A.'S,
MOTION FOR PRELIMINARY
INJUNCTION AND SUPPORTING MEMORANDUM OF LAW**

**Motion**

Plaintiff Chase Manhattan Bank USA, N.A. ("Chase"), as successor by merger to Bank One, Delaware, N.A., by its undersigned counsel and pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Local Rule 4.06, respectfully requests that this court enter a preliminary injunction against the Defendants, National Arbitration Council, Inc. ("NAC"), Charles S. Morgan ("Morgan") and National Arbitration Specialists, Inc. ("Specialists").

TPA#1958492.2

**Supporting Memorandum**

**Introduction**

  Chase seeks a preliminary injunction from this Court pursuant to Rule 65(a) of the Federal Rules of Civil Procedure and Local Rule 4.06.  Chase has filed a verified complaint for damages and injunctive relief against the Defendants asserting claims for tortious interference with contractual relationships and violations of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") also known as the "Little FTC Act," §501.201. *et seq*.  The verified complaint also seeks a declaratory judgment against the Defendants.

  NAC and Morgan have encouraged hundreds of Chase cardholders to bring specious claims against Chase in sham arbitration proceedings conducted by these Defendants.  Defendants have purported to arbitrate the very claims they themselves have encouraged, even though no agreement with Chase provides for arbitration of any disputes concerning any cardholder accounts with NAC or Morgan.

  Recently, Chase has also begun receiving various arbitration notices and documents from Specialists, a Florida corporation formed in July of 2004, using virtually identical forms to those used by NAC, to commence and conduct sham arbitrations.  The only differences between NAC's form papers and Specialists' is that the Specialists' documents have blacked out NAC's name and address with a black marker.  Specialists has apparently taken over the "arbitrations" with respect to several cardholders from whom Chase initially received "notices of arbitration" from NAC, with these papers subsequently redelivered to Chase under Specialists' name.

Chase has been inundated with sham arbitration "demands" and "awards" from organizations just like NAC and Specialists purporting to invalidate credit card debts and even granting awards for money damages in favor of cardholders and against Chase. The failure to enjoin these sham proceedings will cause irreparable damage to Chase.

### Statement of Facts

Defendants or others working on their behalf are listed on various internet sites, in connection with purported "debt elimination companies," who encourage cardholders to assert specious claims against credit card issuers like Chase, and then engage in this arbitration scheme to avoid their lawful credit card debts. NAC and Specialists (and other similar sham arbitration forums) persuade credit cardholders that, by paying fees to NAC or Specialists and utilizing forms and documents supplied by them, the cardholders can eliminate his or her credit card debt. Verified Complaint ¶¶ 3, 13. Defendants convince these cardholders, falsely, that it is illegal for national banks, like Chase or its predecessors, to "loan credit," to these cardholders. *Id.* at ¶ 13. Therefore, or so Defendants argue, credit card obligations due to Chase are not lawful debts. *Id.* Based on this phony theory, Chase cardholders then send forms provided to them by Defendants to Chase, purporting to modify the arbitration agreement between Chase and its cardholders to select NAC or Specialists, as the forum for arbitration. *Id.* at ¶ 12. Thereafter, Defendants proceed with sham arbitrations, and ultimately enter awards against Chase.

Chase has received various notices and other documents related to NAC or Specialists arbitrations in connection with over 240 Chase credit card accounts located in 45 different states with aggregate balances in excess of $2.35 million owed to Chase. Verified Complaint

¶ 14. Chase also has received at least 80 purported arbitration "awards", issued by NAC against Chase. *Id.* These "awards" purport to eliminate the debt owed by Chase's cardholders to Chase and have awarded Chase's cardholders aggregate damages in excess of $800,000, all based on variations of the frivolous "loan of credit" argument described above. *Id.*

The Chase cardholder accounts in question are subject to the terms of Cardmember Agreements, most of which include arbitration provisions. The arbitration provisions in the Chase Cardmember Agreements provide that either party may elect mandatory binding arbitration to be conducted, at the election of the party filing a claim, before one of three nationally recognized arbitration firms: (1) American Arbitration Association ("AAA"); (ii) JAMS; or (iii) National Arbitration Forum ("NAF"). Verified Complaint ¶ 9. Most Cardmember Agreements that arise from credit cards issued by Bank One, Delaware, N.A. or one of its predecessors' cards prior to the October 1, 2004 merger with Chase, specify NAF as the only agreed arbitration forum, although cards issued immediately prior to the merger do specify the same three arbitration forums, AAA, JAMS, and NAF. Neither NAC nor Specialists is specified as a forum for arbitration in any of Chase's or its predecessors' Cardmember Agreements. *Id.* Nor does any Cardmember Agreement permit a cardholder to unilaterally select a new or different arbitrator.

Although little or no public information is available regarding Specialists, NAC, or its arbitrator Charles S. Morgan, Chase has been receiving form "Notices" and "Demands" for arbitration, "Initial Claims," and similar, if not identical forms identifying NAC or Specialists as the forum for an arbitration from numerous cardholders over the past two

years.  Verified Complaint ¶¶ 14-15.  The documentation received by Chase has been virtually identical for each cardholder dispute involving NAC and Specialists.

Over the past few months, Chase has been served with five Applications to Enforce and Confirm Arbitration Awards each filed in the Middle District of Florida, Jacksonville Division, although each has since been voluntarily dismissed.  Verified Complaint ¶ 17.  In addition, it has come to Chase's attention that applications to enforce and confirm arbitration "awards" have been filed in other courts.  *Id.*

Chase has never participated or agreed to participate in any arbitration under the rules of the NAC or Specialists with respect to any cardholders.  Verified Complaint ¶ 16. Defendants were never authorized to accept any arbitration demand nor are they authorized to conduct any arbitration between Chase and any of its cardholders.  *Id.*  Accordingly, the sham "Demand for Arbitration," "Notification of Demand for Arbitration," and "Initial Claim" forms have no effect whatsoever.

Despite the explicit language of the Cardmember Agreements, the Defendants have continued to interfere with the contractual relations between Chase and its cardholders and have engaged in tortious conduct by accepting arbitration demands and issuing sham arbitration "awards." The Defendants' conduct has caused Chase to incur substantial additional expenses and, unless enjoined by this Court, the Defendants will continue these unauthorized arbitrations causing irreparable damage to Chase.

## **Standard For Relief**

To obtain a preliminary injunction, Plaintiff must prove: (1) it has a substantial likelihood of success on the merits, (2) it will suffer irreparable injury unless the injunction

issues, (3) the threatened injury outweighs the damage that the injunction would have on the opposing parties, and (4) if issued, the injunction would not disserve the public interest. *See This That And The Other Gift And Tobacco, Inc. v. Cobb County*, 285 F.3d 1319, 1321-1322 (11th Cir. 2002); *Horton v. City of St. Augustine*, 272 F.3d 1318, 1326 (11th Cir. 2001). Chase has a clear, legal right to preliminary injunctive relief and will suffer irreparable harm if the injunction is not granted.

## Argument

A.   **Chase has a Clear Legal Right to the Preliminary Injunction Requested and has a Substantial Likelihood of Success on the Merits.**

The facts of this case clearly demonstrate that there never was any agreement between Chase and its cardholders to select either NAC or Specialists as a forum in which cardholders could arbitrate disputes.

The arbitration provision contained in Chase Cardmember Agreements allows the cardholder to choose one of three nationally recognized arbitration services, namely, AAA, NAF and JAMS. Cardmember Agreements from the prior Bank One, Delaware, N.A. and its predecessors, select only NAF as the arbitrator of disputes. None of the Cardmember Agreements authorize the cardholder unilaterally to select an alternative arbitration service. Verified Complaint ¶ 9.

Under the Federal Arbitration Act ("FAA") the parties' selection of arbitrators in the contract is binding. *Luckie v. Smith Barney, Harris Upham & Co., Inc.*, 999 F.2d 509, 513-14 (11th Cir. 1993)(customers could not compel brokers to arbitrate before AAA, where contract expressly selected other arbitrators); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCullen*, U.S. Dist. Lexis 22177 (M.D. Fla. 1995) (contract controls rules of arbitration);

*Austin v. Stovall*, 475 So. 2d 1014 (Fla. 3d DCA 1985) (substitute arbitrator could not serve over objections of one party).

The FAA expressly provides that where a method for appointment is set out in the arbitration agreement, the agreed upon method of appointment "shall be followed." 9 U.S.C. § 5. Several courts, relying on § 5, have determined that "[a]rbitration awards made by arbitrators not appointed under the method provided in the parties' contract must be vacated." *Cargill Rice, Inc. v. Empresa Nicaraguense Dealimentos Basicos*, 25 F.3d 223, 226 (4th Cir. 1994); *see also*, *Avis Rent-A-Car Sys., Inc. v. Garage Emp. Union, Local 272*, 791 F.2d 22, 25 (2d Cir. 1986) ("Courts generally enforce [selection clauses] strictly, vacating awards entered by arbitrators whose qualifications or method of appointment fail to conform to arbitration clauses."); *R.J. O'Brien & Assoc., Inc. v. Pipkin*, 64 F.3d 257, 263 (7th Cir. 1995) ("[I]n order to enforce an arbitration award, the arbitrator must be chosen in conformance with the procedure specified in the parties' agreement to arbitrate."); *Southland Corp. v. Keating*, 465 U.S. 1 (1984) (holding one party to an arbitration agreement cannot unilaterally ignore provisions of arbitration agreement).

Thus, in order to have an enforceable arbitration award, the arbitrator must be chosen in conformance with procedure specified in parties' agreement to arbitrate. *R.J. O'Brien*, 64 F.3d at 257. Likewise, an agreement to arbitrate which names a specific arbitrator necessarily contemplates that the named arbitrator will personally make decisions, and the arbitration function cannot be delegated to someone else. *See John W. Johnson, Inc. v. Basic Const. Co.*, 292 F. Supp. 300, 302 (D.C. D.C. 1968), *aff'd*, 429 F.2d 764 (U.S. App. D.C.

1968).  Accordingly, NCA, Morgan and Specialists have no authority to conduct any arbitration involving Chase and its cardholders.

Although the unilateral appointment by a cardholder of NAC or Specialists as the arbitration forum for a dispute with Chase, would be sufficient grounds to declare any such arbitration null and void, the Court should also note that the legal theories espoused by NAC, Morgan and Specialists, that Chase is illegally engaged in the credit card business, is so baseless as to constitute further evidence of the tortious nature of the Defendants' scheme.

Both Chase and its predecessor in interest, Bank One, Delaware, N.A. were national banking associations at all times relevant to the issues in this case.  Courts and the Comptroller of the Currency, who regulate national banks, have consistently upheld the authority of national banks to operate a credit card business under the powers granted by the National Banking Act, 12 U.S.C. § 24 (Seventh), which grants a national bank the power to "loan[] money on personal security."  Administrative rulings and regulations from the Comptroller of the Currency make clear that issuing credit cards and extending credit to cardholders fit within this authority.  *See Colorado Springs Nat. Bank v. U.S.*, 505 F.2d 1185, 1189 (10th Cir. 1974) ("Under the rulings of the Comptroller of the Currency, a bank may issue credit cards"); see also 12 C.F.R. § 7.4001 (defining "interest" that may permissibly be charged by a national bank to "include[], among other things, the following fees connected with credit extension or availability:  numerical periodic rates, late fees" and other fees and charges associated with credit cards).  The Federal Reserve Board also recognized that bank credit cards are "bank services."  *See* 12 C.F.R. § 219.104(d).

Similarly, the 1991 Comptroller's Manual for National Banks, in its interpretive rulings section 7.7378, stated: "A national bank may issue credit cards, either directly or through a subsidiary corporation."[1] More recently, The Comptroller of the Currency Administrator of National Banks published its "2003 Activities Permissible for a National Bank" which provides at p. 17 as follows:

> *Credit Card Banking.* National banks may perform a variety of activities related to credit cards, including issuing credit cards, handling credit applications for other card issuers, operating a card loss notification service, and credit verification services over point of service (POS) terminals. Interpretive Letter (November 14, 1980); Interpretive Letter (January 25, 1979); Interpretive Letter (September 18, 1975); Interpretive Letter (November 14, 1974).

Furthermore, the Supreme Court has implicitly recognized the authority of national banks to issue credit cards, in two recent decisions upholding the preemption of state law limits on interest charged by credit card issuers. In the more recent case, *Smiley v. Citibank*, 517 U.S. 735 (1996), the Court upheld 12 C.F.R. 7.4001, the OCC's regulation that late fee charges on credit card accounts were permissible, as a reasonable exercise of the Comptroller's authority. In *Marquette Nat'l Bank v. First of Omaha Serv. Corp.*, 439 U.S. 299 (1978), the Court discussed the National Bank Act in connection with credit cards, and upheld, 12 U.S.C. § 85, that authorizes a national bank based in one state to charge customers in other states the maximum rate of interest allowed under the laws of its home state, even if

---

[1] This interpretive ruling had been codified as an interpretive regulation at 12 C.F.R. § 7.7378 until 1996. At that time, the OCC eliminated the regulation as unnecessary because national bank's power and authority to offer and issue credit card accounts was clearly established. *See* 61 F.R. 4849, 4860 ("Sections 7.7378 – Issuance of credit cards, 7.7379 – Servicing of mortgage and other loans as agent. The ability of national banks to engage in these activities is well established and a specific interpretive ruling is not needed."). The elimination of this interpretation as no longer necessary did not affect national banks' ability to issue credit card accounts.

such an interest rate exceeds the maximum allowed by state law in the state where the customer is located. *See id*. at 310-311. "Petitioner's final argument is that the 'exportation' of interest rates, such as occurred in this case, will significantly impair the ability of States to enact effective usury laws. This impairment, however, has always been implicit in the structure of the National Bank Act[.] This impairment may in fact be accentuated by the ease with which interstate credit is available by the mail through the use of modern credit cards." *Id*. at 318-19.[2]

For the reasons discussed above, Chase is highly likely to succeed in establishing that the NAC, Morgan and Specialists arbitrations are invalid and in violation of Chase's legal rights under its credit card customers agreements because all rely entirely upon the legal fiction, pushed by NAC, Specialists and others, that national banks such as Chase cannot issue credit card accounts.

**B.    The Sham Arbitration Scheme is Inflicting Irreparable Harm Upon Chase.**

Through these sham arbitration schemes, NAC and Specialists are interfering with Chase's relationships with its credit card customers. Defendants seek to convince Chase credit card customers that Chase's issuance of credit cards to them is an illegal activity. This sullies Chase's reputation among those customers who are misled by these false claims, and it poses a threat to the continuation of Chase's relationship with those cardholders. Such "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a

---

[2] In *United States v. Philadelphia National Bank*, 374 U.S. 321, 326, 83 S. Ct. 1715, 1721, 10 L.Ed.2d 915, the Court refers to the key role which commercial banks play in the national economy and says that commercial banking "describes a congeries of services and credit devices." Listed among the principal banking products are "bank credit cards." *Ibid*. at n.5.

finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush and Co.*, 240 F.3d 832, 841 (9th Cir. 2001).

Additionally, the bogus arbitration scheme results in the cessation of payments legitimately owed by those credit card customers to Chase and otherwise diminishes the chances that Chase will be able to collect those debts. NAC's arbitrations have purported to affect Chase credit card customers who owe over $2.35 million to Chase. While Chase can take appropriate legal action to enforce its valid credit card customer debts, those endeavors will be costly, and it is uncertain at best whether Chase can recoup these additional collection costs from any source. The undue burden and expense the scheme has placed upon Chase in its efforts to collect legitimate debts likewise constitutes the possibility of irreparable harm. In fact, Florida cases have consistently held that there is a presumption of irreparable injury in tortious interference with contractual relations cases. *See, e.g. Unistar Corporation v. Child*, 415 So. 2d 733, 735 (Fla. 3d DCA 1992) ("such irreparable harm could be presumed and need not be alleged or proved in a case involving wrongful interference with a business relationship").

Each day Defendants are allowed to issue sham arbitration "awards" against Chase, in violation of the Cardmember Agreements, Chase faces substantial irreparable injury. As the U.S. District Court for the Middle District of Florida stated in *Mony Secs. Corp. v. Bornstein*, 2002 WL 32153368 (M.D. Fla. 2002), "[b]eing compelled to arbitrate a claim in the absence of an agreement to arbitrate that claim constitutes an irreparable injury." Without a preliminary injunction, and eventually a permanent injunction, enjoining Defendants from conducting arbitrations against Chase, hundreds of sham arbitration awards will undoubtedly

be entered against Chase and countless petitions to confirm the sham "awards" will be filed. Defendants have already issued over 80 unauthorized arbitration "awards" known to Chase. A preliminary injunction is necessary in this case to avoid the irreparable injury of a countless additional sham "awards" issued by Defendants and a multiplicity of additional suits.  *See Florida Power Corporation v. City of Winter Park*, 827 So. 2d 322 (Fla. 5th DCA 2002) (risk of multiple suits and continuing wrongs are injuries justifying injunction); *Dotolo v. Schouten*, 426 So. 2d 1013 (Fla. 2d DCA 1983) (same).

C. **The threatened injury to Chase outweighs any damage a Preliminary Injunction would inflict on the Defendants.**

If the Defendants are not restrained, they will continue to initiate sham arbitration proceedings with arbitrators before whom Chase never agreed to arbitrate and who are likely to issue awards in favor of the cardmembers based on an entirely frivolous legal argument. Chase may be forced to defend itself in hundreds of additional suits involving petitions and to confirm sham arbitration "awards." Chase will also suffer a substantial likelihood of irreparable injury because an unknown number of its customers will fail to pay or delay paying their credit card debts to Chase because of Defendants' fraudulent and tortious conduct.

Consequently, greater injury will be inflicted upon Chase by the denial of a preliminary injunction than would be inflicted upon Defendants by the granting of such relief.

D. **A Preliminary Injunction Will Serve the Public Interest.**

In this case, a preliminary injunction would protect cardholders from being misled by sham arbitration forums like NAC and Specialists, and arbitrators like Morgan, who

encourage cardholders to unilaterally purport to change the terms of their Cardmember Agreements, a practice that is clearly unauthorized under Chase credit card agreements.

## Conclusion

For the foregoing reasons, the Court should enter a preliminary injunction in favor of Chase (including accounts originally issued by Chase's predecessor in interest by merger, Bank One, Delaware, N.A.) and against NAC, Morgan and Specialists and all of their respective officers, agents, servants, employees and attorneys, and those persons in active concert or participation with them, as follows:

(a) That NAC, Morgan and Specialists shall each identify to Chase any of Chase's credit card customers to whom it or he has furnished arbitration forms, or to whom an arbitration "award" has been issued by any of them, and then notify each such Chase credit card customer that such forms or such "award" are null and void;

(b) That NAC, Morgan and Specialists are enjoined from directly or indirectly interfering in any way with any relationships between Chase and its current and former affiliates, on the one hand, and their credit card customers, on the other;

(c) That NAC, Morgan and Specialists are enjoined from directly or indirectly issuing, publishing or otherwise disseminating to credit card customers of Chase and its affiliates any forms purporting to modify agreements to allow arbitration before them, any arbitration demands, arbitration "awards" and any instructions regarding the same, and to refrain from accepting any money from credit card customers of Chase or its current and former affiliates for arbitration services with respect to disputes with Chase;

(d) That NAC, Morgan and Specialists are enjoined from transferring any assets or property, including forms, disks or computers, to any other person or entity for purposes of evading this injunction, or causing or assisting others to form or operate sham arbitration forums that may arbitrate matters involving Chase and its credit card customers; and

(e) That NAC, Morgan and Specialists are enjoined from advising, teaching, transferring or supporting any other person or entity seeking to form or operate a sham arbitration forum that purports to arbitrate matters involving Chase and its credit card customers.

(f) That NAC, Morgan and Specialists are enjoined from: (1) destroying any documents or other information related to their activities with Chase credit card customers, (2) transferring any of that documentation or other information to any other person or entity and (3) attempting in any manner to engage in arbitration or debt avoidance activities involving Chase credit card customers through or in conjunction with any other entity or person.

        Respectfully submitted,

        /s/ Robert M. Quinn
        Robert M. Quinn
        Florida Bar No. 305898
        Carlton Fields, P.A.
        Post Office Box 3239
        Tampa, Florida  33601-3239
        Telephone:  813/223-7000
        Facsimile:  813/229-4133
        E-mail:  rquinn@carltonfields.com
        Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I certify that a copy of Plaintiff, Chase Manhattan Bank USA, N.A.'s Motion for Preliminary Injunction and Supporting Memorandum of Law has been filed by electronic filing and served by mail to National Arbitration Council, Inc., c/o Spiegel & Utrera, P.A., as Registered Agent, 1840 SW 22nd Street, 4th Floor, Miami, Florida 33145; Charles S. Morgan, 7777 South Shekinah Place, O'Brien, Florida 32071; Tonia M. Troutwine, Esq., Corporate Transactions, LLC, Attorneys for Defendants, National Arbitration Council, Inc. and Charles S. Morgan, 937 Lenox Avenue, Suite 1, Miami Beach, Florida 33159; and National Arbitration Specialists, Inc., c/o Amber Jensen, as Registered Agent, 511 Old Hillsborough Avenue West, Suite B, Seffner, Florida 33584, this 23rd day of November, 2004.

/s/ Robert M. Quinn