UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHASE MANHATTAN BANK USA, N.A.,
      Plaintiffs,

vs.

CASE NO.: 3:04-cv-01205-20-HTS

NATIONAL ARBITRATION COUNCIL, INC., and
CHARLES S. MORGAN, and NATIONAL
ARBITRATION SPECIALISTS, INC.,
      Defendants.

_____

## MOTION TO DENY AND OPPOSITION
## TO REQUEST FOR TEMPORARY INJUNCTION

COMES NOW, Defendants, NATIONAL ARBITRATION COUNCIL, INC. and CHARLES

S. MORGAN, (hereinafter referred to respectively as "NAC" and "Morgan") represented by

counsel, file this Motion to Deny and Opposition in response to CHASE's Motion for

Temporary Injunction as follows:

### SUMMARY OF FACTS

1.    NAC and MORGAN as a valid arbitration organization and arbitrator, arbitrated

claims submitted by consumer claimants subject to the Florida Arbitration Code

(FAC), § 682.01 et seq of the Florida Statutes and Federal Arbitration Act (FAA).

2.    All decisions and awards were made in accordance with the requirements of the

Florida Arbitration Code, Section 682.01et seq. and the FAA. (Exhibit A –

Complaint filed with the Mediator Qualifications Board, regarding Arbitration Debt

Elimination Scheme –Charles S. Morgan – Unanimously Dismissed by this board

of the Supreme Court of the State of Florida pursuant to rule 10.810(h) of the

Florida Rules for Certified and Court-Appointed Mediators **Preliminary Review**.

Upon review of the complaint and the mediator's or applicant's response, the committee may find that no violation has occurred and dismiss the complaint.)

3.     The respondent, CHASE, at all times refused to respond to a single claim. Respondent at no time exhausted its legal remedies or complied with statutory law by filing an action to vacate, modify, or correct the decision within the statutory period of 90 days following its receipt of a copy of the decision.

4.     NAC and Morgan have not interfered in any contractual relations between claimant and respondent.   Nor have NAC and Morgan solicited claimants to initiate arbitrations.   Additionally, CHASE has not provided sufficient documentation or evidence to support its claim.

5.     Respondents have failed to provide sufficient evidence substantiating the claims and allegations made in their motion for preliminary injunction.

6.     Claimants actively and independently (without the solicitation of NAC) sought the services of NAC to arbitrate claims and made such requests in signed writing to the arbitration organization.

7.     NAC and Morgan are independently owned and operated and have no affiliation with any "debt elimination companies" (Exhibit B).

8.     Any listing referring to NAC and/or Morgan on internet sites of "debt elimination companies" has been done without the express or implied permission of NAC and Morgan (Exhibit C).

9.     NAC and Morgan are authorized to arbitrate a claim once it is submitted by the claimant in accordance to the Florida Arbitration Code, §682.01 et seq of the Florida Statutes, until and unless respondent raises valid objections that require the dismissal of the dispute by the arbitrator. (FAC §682.02 and FAA §2). NAC and

Morgan have dismissed claims when respondents provide sufficient evidence to support such a dismissal. (Exhibit D).

10. Submission to the court to appoint an arbitrator if one party refuses is not mandatory or required by statute.  However, the FAA and FAC statutorily grant courts, ". . . upon the application of either party to the controversy . . . [the jurisdiction to appoint an arbitrator] . . . as the case may require. (FAA §5, FAC §682.04)." (Exhibit E – other courts have appointed NAC as arbitrator when the parties requested the court to take such action).

11. Neither claimant nor respondent in any arbitration dispute applied to the court to appoint an arbitrator, stay proceedings or vacate an award within the statutory 90 day period. According to the Federal Arbitration Act §12 <u>Notice of motions to vacate or modify . . .</u>, "Notice of a motion to vacate, modify, or correct an award [**MUST**] be served upon the adverse party or his attorney within three months after the award is filed or delivered." (See also Florida Arbitration Code §682.13(2)).

12. Several arbitration awards have been confirmed throughout Florida. (Exhibit F). Additionally, many claims against consumer claimants that were arbitrated by NAC have been voluntarily dismissed by counsel for the plaintiff bank. (Exhibit G1-G2).   Cases that were to be confirmed by consumer claimants but voluntarily dismissed were in some cases dismissed because of threatening and harassing phone calls from bank counsel and not due to independent research, legal theory or thought of the dismissing claimant or counsel.

13. NAC and Morgan have not provided any forms to claimants and CHASE has failed to provide any evidence supporting such an allegation.

14. NAC and Morgan have not at anytime provided any advice to claimants and CHASE has failed to provide any evidence supporting such an allegation.

15. NAC and Morgan have not interfered with any contractual relations between Chase and its cardholders nor has it engaged in any tortuous conduct as is alleged and unproven by any evidence CHASE has provided. CHASE has not shown this court evidence sufficient to support a claim for irreparable damage/ injury or substantial additional expenses and therefore lacks adequate standing in which to bring this claim.

**Standard for Relief**

16. CHASE as the moving party is unable to provide sufficient evidence to support a claim of relief in obtaining a preliminary injunction: (1) there is no substantial likelihood of success on the merits, a) it is unable to prove **any** of the 4 elements required to obtain relief for a claim of tortuous business interference with contractual relations and b) no proof has been provided that NAC or Morgan engaged in any unfair or deceptive trade practices; (2) Chase will not suffer irreparable injury if the injunction is not issued: a) they have an opportunity during the arbitration proceeding to object or raise claims for lack of jurisdiction if any arbitrations are improperly brought before the forum and b) there is a 90 day statutory period to raise claims in a court of law vacating, modifying, or correcting any awards (FAA§12, FAC§682.13(a)), c) regardless whether future claims are arbitrated they are still subject to validation by the courts in order to be enforceable which would limit and/or potentially extinguish any threatened harm or injury; (3) the threatened injury does not outweigh the damage that the injunction would have on NAC and Morgan; a) Chase will suffer no injury because any dispute with a claimant existed prior to arbitration, is subject to a final determination and judicial

confirmation, b) NAC and Morgan will incur significant injury and suffer damages in its business reputation, its income, its right and in its ability to arbitrate consumer disputes and (4) if issued it will disserve the public interest: a) hundreds of thousands of consumers are being subjected to biased arbitration proceedings on a daily basis, b) an injunction will have a chilling effect on the public consumer and it is already occurring in other cases, c) due to lack of alternative arbitration forums and threatened costly litigation, consumers are filing bankruptcy rather than pursuing available legal remedies, an act that not only hurts the individual but the economy and the entire public interest of all people of this nation, d) the alleged required forums and arbitration clauses/agreements are being held invalid by judges in courts throughout this state and the country (Exhibit H) Bellsouth Mobility LLC v. Christopher, No. 4D04-2924 (Fla.App. 03/02/2005) (holding arbitration provision limiting consumer's legal remedies invalid) (Exhibit I1-I3), and e) to allow an injunction would violate the claimants due process rights under Article III of the Constitution in direct contravention to the processes developed by the legislature. See Four Seasons Hotels and REsorts, B.V. v. Coinsorcio Barr, S.A., 320 F.3d 1205 (11th Cir. 02/05/2003); Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000); McDonald's Corp., 147 F.3d 1301, 1306 (11th Cir. 07/28/1998); All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc., 887 F.2d 1535, 1537 (11th Cir. 1989).

17.  Chase has no legal right to preliminary injunctive relief and will not suffer irreparable harm if the injunction is denied, NAC and Morgan will suffer an irreparable injury and a preliminary injunction would disserve the public interest. "[A] preliminary injunction is an extraordinary and drastic remedy not to be

granted unless the movant clearly established the 'burden of persuasion'" as to each of the four prerequisites. McDonald's Corp., 147 F.3d 1301, 1306 (11th Cir. 07/28/1998); see also Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion.)

## COUNTERARGUMENT

**A. CHASE has no legal right to the preliminary injunction requested and has no likelihood of success on the merits.**

18.   NAC and Morgan deny knowing of the existence of any contractual relationship between Chase and consumers which do not authorize NAC to conduct any arbitration involving disputes between Chase and consumers.

19.   According to claimants, they had a right to arbitrate their disputes before NAC and Morgan.   CHASE never challenged this allegation or responded to the claim. CHASE never provided NAC or Morgan with any evidence to allow it to dismiss the claim.

20.   CHASE has failed to pursue the legal remedies available to it, and has suffered no injury as a result of NAC and Morgan's actions.   Therefore, CHASE lacks standing to bring this lawsuit against NAC and Morgan since it has failed to prove an injury.

21.   All of the cases cited by CHASE implying a binding arbitration and forum selection agreement, involve **mutually** agreed to forums (that were negotiated by parties in arms length transactions or in specialized industries) that are later enforced by the courts.   The instant case is distinguishable in that the contract provision alleged to be binding/controlling is unilateral and not negotiated at any time on any level. Additionally, the same provision/agreement has been held invalid by other courts and similar provisions have been held invalid by courts of this state. North Carolina

6

Case referenced above; *See also* **_Bellsouth Mobility LLC v. Christopher_**, No. 4D04-2924 (Fla.App. 03/02/2005) (holding arbitration provision limiting consumer's legal remedies invalid).

22.    CHASE has never responded to the arbitration claim, therefore there is no evidence of what agreement is controlling or actually exists between the parties. In its failure to respond in any manner when properly notified of the arbitration proceeding and granted an opportunity to state its opposition, CHASE has waived its right to deny the claimant's allegations and failed to meet the first element of its claim for tortuous interference by proving the existence of a contract with the claimant. In other cases, NAC has dismissed the claim when a bank responded stating no agreement to arbitrate existed (Exhibit D1- D3).

23.    CHASE has waived its right to object by not following the statutory 90 day period for vacating an award granted by both the FAA and the FAC. In doing so, it has also failed to meet Element 2 of its claim – NAC and Morgan had no knowledge of an agreement as CHASE claims. The only knowledge NAC and Morgan had was the claim being made by the consumer that they had a right to arbitrate their dispute before NAC in accordance with an arbitration agreement with CHASE.

24.    Therefore, Element 3 is not met by CHASE either, with no knowledge of the actual agreement with CHASE, NAC and Morgan lacked the necessary intent to procure a breach of contract. Additionally, the breach of contract existed prior to the dispute being submitted to the arbitration forum. NAC and Morgan had no relationship with the claimant and no opportunity to in any way induce, procure or influence the consumer to breach its contract.

25.    The Fourth Element, is not met because as a valid arbitration organization and arbitrator, NAC and Morgan are justified and privileged to arbitrate claims that are submitted to its forum.

**B. CHASE has suffered no irreparable harm caused by NAC and Morgan.**

26.    NAC and Morgan deny being the direct and proximate cause of any intentional interference and further deny Chase has sustained any amount of monetary damages and/or suffered any immediate or irreparable injury, loss, harm or damage.

27.    The dispute between the consumer and CHASE existed prior to an arbitration proceeding ever being initiated.   This will be easily provable by numerous documents, correspondence, communication and other activities that may have occurred between the consumer and CHASE before a submission to the arbitration organization.   To imply or allege that NAC and Morgan had any involvement or procurement of initiating the dispute and therefore causing irreparable harm is preposterous and absurd.

28.    There is no evidence that the arbitration process in anyway modified Chase's reputation among those consumers in which it had existing disputes.

29.    In many cases, consumers have filed bankruptcy, either proceeding, during or following the arbitration of these disputes.   Any payments to be made to CHASE had already been ceased and the dispute originated prior to the submission of the claim to arbitration.   Therefore, NAC and Morgan can not be held liable for any alleged or potential injury resulting from an independent act of a third party.

**C.   CHASE does not suffer from any threatened injury and any preliminary injunction would inflict substantial damage on NAC and Morgan both economically and procedurally.**

8

30.   CHASE has failed to pursue the legal remedies available to it, and has suffered no injury as a result of NAC and Morgan's actions. Therefore, CHASE lacks standing to bring this lawsuit against NAC and Morgan since it has failed to prove an injury.

31.   NAC and Morgan must not be held liable for any alleged or potential injury resulting from an independent act of a third party.

32.   NAC and Morgan will incur significant injury and suffer damages in its business reputation, its income, its right and in its ability to arbitrate consumer disputes. In violation of both the Federal Arbitration Act 9 U.S.C. § 1et. Seq. and the Florida Arbitration Code § 682 et. Seq.

33.   Chase has no legal right to preliminary injunctive relief and will not suffer irreparable harm if the preliminary injunction is denied. NAC and Morgan will suffer an irreparable injury and a preliminary injunction would disserve the public interest. "[A] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion'" as to each of the four prerequisites. McDonald's Corp., 147 F.3d 1301, 1306 (11th Cir. 07/28/1998); see also Texas v. Seatrain Int'l, S.A., 518 F.2d 175, 179 (5th Cir. 1975) (grant of preliminary injunction "is the exception rather than the rule," and movant must clearly carry the burden of persuasion.)

**D. A Preliminary Injunction will disserve the public interest.**

34.   Hundreds of thousands of consumers are being subjected to biased arbitration proceedings on a daily basis in the unilaterally imposed arbitration forums against the objections of the individuals.

35.   An injunction will have a chilling effect on the public consumer to pursue valid claims whether in a forum that it selected arguably in accordance to its rights under

its agreement with CHASE, or in the court system. When ultimately, CHASE failed to file a timely objection to the consumers' allegations waiving any potential rights CHASE may have had to pursue this litigation and violating the consumer's right to due process. Thereby increasing costs for an already potentially economically challenged individual.

36. Due to lack of alternative arbitration forums and threatened costly litigation, consumers are filing bankruptcy rather than pursuing available legal remedies, an act that not only hurts the individual but the economy and the entire public interest of all people of this nation.

37. The alleged required forums and arbitration clauses/agreements are being held invalid by judges in courts throughout this state and the country (See Exhibit H – North Carolina case), Bellsouth Mobility LLC v. Christopher, No. 4D04-2924 (Fla.App. 03/02/2005) (holding arbitration provision limiting consumer's legal remedies invalid) (Exhibit I1-I3).

38. To allow an injunction would violate the claimants due process rights under Article III of the Constitution in direct contravention to the processes developed by the legislature under the FAA and the FAC by forcing the claimant to participate in additional arbitrations or litigation when the consumer properly sought adequate adjudication of its dispute and CHASE was the party who failed to exercise its due process rights and therefore waived them.

### Conclusion

WHEREFORE, NAC and Morgan requests that the Court deny the Motion for a preliminary injunction because CHASE is unable to clearly establish the burden of persuasion as to all four elements.

Based on the foregoing, NAC and Morgan request the court deny any relief to Chase,

dismiss the complaint with prejudice and grant attorney's fees and costs pursuant to Fla.

Stat. §57.105 and RUAA §14(e).

DATED: March 4, 2005

Respectfully Submitted,

_Tonia M. Troutwine_

TONIA M. TROUTWINE
Florida Bar No. 0692387

*Attorney for Defendants NAC and Morgan*

CORPORATE TRANSACTIONS, LLC
(A Private Law Firm)
Two Datran Center
9130 Dadeland Boulevard
Suite 1600
Miami, Florida 33156
Telephone: 305-670-0373
Facsimile: 305-670-0398

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing has been furnished by Facsimile and U.S. Mail delivery to Robert M. Quinn, Esquire, Carlton Fields, P.A., Post Office Box 3239, Tampa, Florida 33601-3239, on this 5th Day of March, 2005.

CORPORATE TRANSACTIONS, LLC
(A Private Law Firm)
Two Datran Center
9130 Dadeland Blvd, Suite 1600
Miami, Florida 33156
Tel: 305-670-0373/Fax: 305-670-0398

By: _____
Tonia Troutwine, Esquire
Florida Bar No. 0692387



Barbara J. Pariente
Chief Justice

Elisabeth H. Goodner
State Courts Administrator

## Office of the State Courts Administrator

**Sharon Press, Director**
**Dispute Resolution Center**
**(850) 921-2910 (fax) 922-9290**
**e-mail: presss@flcourts.org**

*Exhibit A-1*

October 4, 2004

Charles S. Morgan
Post Office Box 233
O'Brien, Florida 32071

Dear Mr. Morgan:

The complaint filed against you with the Mediator Qualifications Board by Stanley Erskine has been dismissed without prejudice pursuant to rule 10.810(h), Florida Rules for Certified and Court-Appointed Mediators. Please review the enclosed document for the Committee's final decision. As outlined in the Florida Rules for Certified and Court-Appointed Mediators, this complaint remains confidential.

If you have any questions or concerns regarding this matter, please let me know, I can be reached at (850) 921-2910.

Sincerely,

Sharon Press

Sharon Press

SP/db

Enclosure

*Exhibit A-1*

# Mediator Qualifications Board

*Northern Division*

In Re: Charles S. Morgan                         Case Number: MQB 2004-006

Complaint Committee:        Carolyn Davis Cummings, Chair
                            Kahlil A. Day, Family Mediator
                            Joe Fernandez, County Mediator

---

### Dismissal Order

It is the unanimous view of the Complaint Committee that the above referenced case be dismissed without prejudice pursuant to rule 10.810(h), Florida Rules for Certified and Court-Appointed Mediators. The matter is hereby concluded.


_____          ___7/28/04_____
COMMITTEE CHAIR                           DATE
CAROLYN DAVIS CUMMINGS


Exhibit A-2

Law Offices
of

# Erskine & Fleisher

Suite 300
55 Weston Road
Fort Lauderdale, Florida 33326-1112

Stanley B. Erskine, Esquire ♦
Andrew D. Fleisher, Esquire ♦♦

(954) 384-1490
Fax (954) 384-4088

♦ Member of the Florida & Texas Bar

♦♦ Member of the Florida & New Jersey
Bar

Please Refer to Our File No.

June 2, 2004

Dispute Resolution Center
Supreme Court Building
500 S. Duval Street
Tallahassee, FL 32399

Re: *Arbitration Debt Elimination Scheme-Charles S. Morgan*

Dear Sir/Madam:

The undersigned, practices law in the State of Florida with respect to representing credit grantors and collecting outstanding debts due same relative to a variety of financial instruments. During the course of that representation, the undersigned has come into contact with circumstances whereby a variety of debtors have attempted to force a purported Arbitration Award against the credit grantor represented by the above captioned firm as a set off to a suit filed against same for collection of a specific debt.

The above firm on behalf of Discover Bank filed suit against an individual by the name of Sarah M. Lamkin under Case Number 03CC1395 in County Court in the 1st Judicial Circuit in and for Okaloosa County, Florida. After initiation of the suit, Ms. Lamkin advised the undersigned's office notwithstanding the Court, that she was in possession of an Arbitration Award entered against the credit grantor Discover Bank prior to the initiation of suit. (See Exhibit 1 through and including Exhibit 8). There is no basis in law or contract which would have allowed this person to precipitate an Arbitration proceeding with the purported entity by the name of National Arbitration

Council, Inc. (In other words there is an organized effort to exhibit that one may eliminate a debt by procuring an Arbitration Award against a creditor even though there is no contractual right, i.e. a debt elimination scheme to procure funds from unwary consumers). As represented by Ms. Lamkin, the individual who is apparently running the National Arbitration Council, Inc., has been certified as a County Mediator by the Supreme Court of Florida. (See Exhibit 8 and Exhibit 9).

The National Arbitration Council, Inc., is a corporation, which has been organized and existing under corporate laws of the State of Florida with its principle address in Ft. Lauderdale, Florida but its mailing address is in O'Brien, Florida where the certified County Mediator Charles S. Morgan apparently resides. (See Exhibit 10 through and including

Exhibit A-3

Exhibit 18). Clearly, he is misusing his office as a certified mediator to seek remuneration from uninformed debtors that they can eliminate debts when they do not have a contract with the creditor to allow such proceedings through his for profit corporation.

Aside from the National Arbitration Counsel, Inc., there have been a variety of other purported Arbitration services that are continuing to do business or are otherwise out of business by the name of Century Arbitration Associates, Inc. and Southeast Arbitration Service, Inc. Century Arbitration Associates, Inc. is also another corporate entity who has filed as a foreign corporation registered to do business in Florida. (See Exhibit 19 through and including Exhibit 37). There is also another phony arbitration association known as the American Arbitration Forum (See Exhibit 86 through and including Exhibit 92).

Consumers within this State and other States within the United States, are continually being referred to these debt elimination Arbitration schemes through a variety of artifices including but not limited to various Internet sites. (See Exhibit 37 through and including Exhibit 48, with specific reference to the National Arbitration Council, Inc. in Exhibit 45). These sites normally represent, (notwithstanding the phony Arbitration services) that individuals can legally eliminate their debts to credit grantors by utilizing their scheme of obtaining an illegitimate arbitration award against their credit grantor.

Recently, one of these consumers attempted to seek enforcement of a dubious Arbitration Award from Century Arbitration Associates of Florida in the case of Sorensen vs. Fleet Bank, 2004 WL 964265(D. MINN., April 30, 2004), (see Exhibit 49 and Exhibit 50). As the Court indicated in that particular case, the Court seriously questioned the legitimacy of Century Arbitration Associates and did not domesticate the award.

A rash of these dubious entities, have been mostly created and formed in the State of Florida. There have been others who have opened in other states but the primary location of these entities has been in our state. These entities prey upon consumers with the representation that they will be able to of course eliminate their debts through this phony Arbitration Award. These entities take advantage of the fact that there are no rules and procedures set up for such organizations within this state for these types of associations and more often than not are profit entities as opposed to non profit associations set up for this specific purpose on a national basis for profit unlike the American Arbitration Association. Notwithstanding the foregoing proceedings or lack thereof, financial institutions have also faced similar entities such as Southeast Arbitration Services, Inc. Citibank had to go into Court to seek appropriate injunctions against these entities for precipitating phony awards. (See Exhibit 51 through and including Exhibit 55).

It is more than apparent that these individuals are without force of law within which to institute these Phony Arbitration Awards. The request of the undersigned, an officer of the Court within this State is that the following relief be instituted against these entities in order to preclude any further inappropriate conduct being perpetrated by these folks against credit grantors or consumers within this State as follows.


Exhibit A-4

1. Rescission of Charles S. Morgan's opportunity to be a certified County Mediator under the authority of the Supreme Court of Florida.

2. Precipitate appropriate actions against these Arbitration companies seeking appropriate damages for violation of consumer rights notwithstanding injunctions and/or such other relief as may be allow pursuant to statute.

3. If your institution does not have the requisite authority within which to precipitate such action refer same to the appropriate governmental agency with respect to same.

4. If in the event any one of your agency declines to proceed with action to advise the undersigned's office of your intention not to proceed against these entities or individuals in order to allow the undersigned to precipitate such actions as may be allowed pursuant to Florida Statute and/or case law supporting same.

In conclusion, I would like to thank you for taking the time or opportunity to review my request given the activities of the individuals involved. Any questions, of course, you may contact the undersigned at the above address or phone number at extension 252. In advance thank you for your anticipated cooperation in this regard. I remain,

Very truly yours,

The Law Offices of
ERSKINE & FLEISHER

Stanley B. Erskine, Esq.

Enclosure

SBE/bnv

3

Exhibit A-5



Barbara J. Pariente
Chief Justice

Elisabeth H. Goodner
State Courts Administrator

## Office of the State Courts Administrator

**Sharon Press, Director**
**Dispute Resolution Center**
**(850) 921-2910   Fax (850) 922-9290**
**e-mail: presss@flcourts.org**

July 16, 2004

Charles S. Morgan
Post Office Box 233
O'Brien, Florida 32071

Dear Mr. Morgan:

The Dispute Resolution Center received the enclosed grievance report which alleges violations of the Florida Rules for Certified and Court-Appointed Mediators in accordance with rule 10.810(e). A Complaint Committee of the Mediator Qualifications Board reviewed the complaint and found it to be facially sufficient in relation to the rules listed in the attached grievance report. You now have the opportunity to respond to this report. If you wish to do so, your *sworn, notarized* response must be received at the Center within 20 days of your receipt of this letter. The 20 day interval commences with the date on the certified mail return receipt. Please send one original and five copies of your response by certified mail.

Enclosed with the grievance report, you will find a list of the members of the Northern Division of the Mediator Qualifications Board, including the three members serving as the Complaint Committee in your case. Since an additional five members could compose the Hearing Panel, we request that you review the entire list of members of the division. Pursuant to rule 10.870, you must notify us in writing if you believe that any person on this list should be disqualified from serving on your grievance.

After the expiration of the 20 day interval, the Center will forward a copy of your response and any request(s) for recusal to the Committee. When final decisions on recusal are made, the Committee will set a meeting date to discuss this grievance. As soon as it is made, the Center will inform you of the Committee's decision. The Committee may want to meet with you and the complainant; if this is the case, you will be contacted with that information.

Exhibit A-6

National Arbitration Council, Inc.
2550 N. Federal Hwy, 2nd Floor
Ft Lauderdale, Fl 33305

## RESPONSE TO GRIEVANCE REPORT

Dear Sharon Press:

Please excuse the lateness of this response as I am under the care of Dr. John Cosby DO and due to his orders have been recovering from high blood pressure and the fears of a second heart attack. This response has also taken additional time to collect and formulate as some of the documents needed to be obtained from individuals not under my immediate control were delayed.

For the record I am Charles S. Morgan Florida certified mediator no. 15745 C. My mailing address is PO Box 233, O'Brien FL 32071. I am the sole owner of the National Arbitration Council, Inc a Florida corporation, an arbitration and mediation firm address listed above.

I am not clear on what the actual complaint is. It appears that someone is attempting to associate me and/or the National Arbitration Council, Inc. with several other arbitration firms listed. i.e. Century Arbitration Associates, Inc. of Ocala FL., a Tracy Webster Officer/Director, The Syndrome Syndicated Corp., Hartford, CT a Steve Sailor Chairman. Southeast Arbitration Service, Ty Watts and Wiley Howell position with firm unknown, and American Arbitration Forum, Tampa Fl.

Let me state that neither I, Charles S. Morgan, nor the National Arbitration Council, Inc. has ever had any connection, association, contract or other business dealings (nor personal association) with any of the aforementioned firms. Nor contact via phone conversation involving my business nor that of their own business dealings.

Exhibit 37 As to the Syndrome Syndicated Corp., Hartford, CT a Steve Sailor, Chairman.

I contacted Mr. Steve Sailor inquiring as to the nature of the listed arbitration firm a National Arbitration Council, on his web site. Sailor advised me that he nor anyone associated with his firm has or ever had contact with, association with neither in a business dealings nor on a personal level with Charles Morgan or the National Arbitration Council, Inc of Florida, and immediately removed the name National Arbitration Council from his web site. Sailor made the statement that the web site "must have been hacked into" for this entity National Arbitration Council to be listed thereon. Morgan was not aware of the listing National Arbitration Council, (address unknown nor was there telephonic contact information provided on the web site) on that web site until brought to Morgan's attention.

Mr. Sailor has submitted an affidavit to that effect, See Morgan's Exh. 1.

Exhibit A-7

A search by Morgan with the internet search engine Googles showed 7 listings for the name National Arbitration Council. None of the 7 listed by Googles being the National Arbitration Council, Inc. of Florida, owned by Morgan.

Similarly, I contacted Mr. Tracy Webster in Ocala Fl. and neither he nor anyone associated with his firm has or had any contractual relationship with the National Arbitration Council, Inc. nor Morgan.

Exhibit 22, Century Arbitration Associate, Inc. Exhibit 37, The Syndrome Syndicate Corp., Exhibit 55, Consumer Arbitration Forum, Richardson, TX and Exhibit 51, the Southeast Arbitration Service, nor Exhibit 87, the American Arbitration Forum, Inc. Tampa FL have no connection, affiliation, association of any type with the National Arbitration Council, Inc. nor Morgan.

As to the arbitration of Sarah M. Lamkin of Ft. Walton Beach, FL.

Lamkin contacted the National Arbitration Council, Inc. (NAC) in regards to a dispute with Discover Card and submitted a signed statement that there is an agreement to obtain arbitration to settle disputes. NAC contacted Discover Card at the address show (Exh. 1) via notification, signature confirmation USPS mailing, that Lamkin had requested arbitration to settle a dispute and Lamkin has requested the National Arbitration Council, Inc. as the arbitration forum to resolve the conflict.

Exhibit 1 shows the certified mailing number for this notification to Discover Card.

The arbiter upon the evidence submitted issued an award in favor of Sarah M. Lamkin. Exh. 5.

Morgan, as custodian of records, certified the copy of the award issued to Lamkin shown as Exh. 7 as being an exact copy of the records held by NAC.

The National Arbitration Council, Inc does not have an association, affiliation, contract or any other business agreement either written or oral with any of the listed firms above nor is Charles S. Morgan associated in any way, professionally or socially, with the arbitration firms listed. All reference to an alleged business association with the arbitration firms listed above is hearsay and should be disregarded and deleted from consideration in this grievance report.

Respectfully submitted.

Charles S. Morgan for himself and the National Arbitration Council, Inc.

Submitted August 20, 2004

Charles S. Morgan
President National Arbitration Council, Inc.

2

Exhibit A-8

## AFFIDAVIT

STATE OF FLORIDA      )
                       )    ss

COUNTY OF ESCAMBIA   )

Comes now John Gliha, the Affiant, and does solemnly affirm that the statements herein are true and correct in substance and in fact, to wit:

1. I am competent and qualified to testify as to the facts herein and that I have personal knowledge of each.

2. I am the author of Winning The Collection Game. I have written, edited and published this book since 1998. It is founded upon research I obtained studying the public records across the country regarding collection lawsuits filed by creditors such as Citibank.

3. In March of 2002, I published a version of my text that encouraged consumers to create and utilize the same unfair system that the banks were in seeking commercial arbitration awards against their customers.

4. Citibank responded by suing all of these companies asking for temporary and permanent injunctions. They sued the Consumer Arbitration Forum, the American Arbitration Forum, Southeast Arbitration, National Arbitration Council and a few others in recent months.

5. I have been collecting information regarding these suits from the public records. Each complaint includes the false testimony of Terri Ryning and Elizabeth Barnett. These two individuals also file affidavits in support of collection lawsuits across the country, claiming to be responsible for customer account records, yet in their

Exhibit B-1

affidavits filed in relation to this series of lawsuits, they indicate they are employed by the law firm as paralegals. Ryning also provides false statements about a conversation I had with her in July of 2002.

6. I have no business or personal interest in these arbitration firms. I encourage consumers to continue using the same system as the banks in arbitration claims. I am an advocate of fairness and impartiality in resolving collection disputes and my research has shown that the bank customer has no chance of a fair and impartial hearing in an arbitration proceeding that is chosen solely by the creditors such as Citibank, and in nearly every instance, without a valid agreement to arbitrate, and while there is fraud, corruption and undue influence in the undertaking of these proceedings.

7. In its lawsuit against Citibank, I was deposed and asked questions about my personal salary and banking practices, questions about my vendors and contractors such as who printed my books and answers my phone, questions about other corporations of which I was affiliated, and he engaged me in argumentative questions regarding the opinions and theories written in my book, Winning The Collection Game.

8. I was also asked questions, the answers of which would seem to be his attempt to implicate me in some kinds of crimes, such as asking me if I would ever be involved in a fraud, or questions that would show by my responses that I believed that the statements made in my text regarding "debt elimination" were untrue or false.

9. Plaintiff's attorney attempted to have me answer questions as if he was accusing me of making false statements or failing to comply with the subpoena.

10. The questions were humiliating, harassing and argumentative, and moreover, they each were patently irrelevant to the complaint filed against the defendants. It was very clear during the entire deposition that it was nothing more than an investigation into my life, without any consequence to the defendants or proving any element of the plaintiff's case.

11. I provided a copy of my publications in July of 2002 to Terri Ryning. Before completing the order, I called to ask why she wanted it since she was working for Citibank. She explained that she was conducting an investigation of my company. I then explained that I have a policy of providing my publications free of charge to any

Exhibit B-2

attorney or government official upon request.  I also explained to her over the telephone that I was available if she had any questions about the material.

12.  In the course of its lawsuit against Southeast, Citibank had attempted to serve my mother with a subpoena to be deposed.



Signature of Affiant

STATE OF FLORIDA            )
                           )       ss
COUNTY OF ESCAMBIA          )

Subscribed and sworn to before me a notary public this ___ day of November 2004.

Signature of Notary                                    [ls]

MARY BETH SMITH
Commission # DD0111361
Expires 4/23/2006
Bonded through
(800-432-4254)  Florida Notary Assn., Inc.

Exhibit B-3

# Affidavit

The undersigned affiant, being duly sworn on oath, deposes and says: That he/she is a marketer of a business that is in the business of marketing for Credit Card Resolution Companies. That, as an marketer for these Companies, he/she has the authority to execute this affidavit on behalf of these Companies and to bind Him/Herself to it's provisions and said marketer will have this affidavit notarized upon signing this affidavit.

The undersigned nor any of it's agents, associates or assigns has no affiliation with A "National Arbitration Council" of any Country, Region, State, County, City or Town.

Signature of Marketer: _____

Print Name of Marketer: _____STEVE Sailor_____

Sworn to and Subscribed Before Be This ___ day of ___May___, 20___

Signature of Notary Public: _____

My Commission Expires
Nov. 30, 2005

Exhibit C

# National Arbitration Council, Inc.
### Arbitration and Mediation Forum

Ben Almazar
PO Box 20043
Castro Valley, CA 94546-8043

July 20, 2004

Arbitration Case No: 30314

Re: Almazar vs. Honolulu Federal Credit Union

Dear Mr. Almazar,

As you are aware the National Arbitration Council, Inc. has been named as defendant in a suit brought by Honolulu Federal Credit Union in the above styled case. Our law firm of Spiegel & Utrera, P.A. of Miami Florida has been appointed to represent NAC.

On May 10, 2004 Spiegel & Utrera, P.A. mailed to you a letter of request for certain documents that you had said were in your possession. This letter was received by you on May 18, 2004 and signed for by you.

We have not nor has the law firm of Spiegel & Utrera, received any correspondence from you in regards to this matter.

Based upon your failure to respond to this request the National Arbitration Council, Inc. has as of this date dismissed the arbitration dispute between Honolulu Federal Credit Union and Ben Almazar. This cause of action is dismissed with prejudice.

Done and set this day 20th of May, 2004.

Charles S. Morgan

NAC President

*Exhibit D-1*

# FOX, WACKEEN, DUNGEY,
# SWEET, BEARD, SOBEL & MCCLUSKEY, L.L.P.

Deborah B. Beard***
Richard J. Dungey*
M. Lanning Fox*
Michael J. McCluskey
Jack M. Sobel**
Gary L. Sweet
W. Thomas Wackeen**

1100 S. Federal Highway
P.O. Drawer 6
Stuart, Florida 34995-0006
(772) 287-4444
Fax (772) 220-1489
Jupiter (561) 744-6499
Port St. Lucie (772) 878-5814
www.foxwackeen.com

Robert A. Goldman
Shelly J. Stirrat
***Frederik W. van Vonno
Susann B. Ward
Jennifer Alcorta Waters

*Board Certified Real Estate Lawyer
**Board Certified Civil Trial Lawyer
***Board Certified Marital & Family Lawyer
****Board Certified City, County & Local Government Lawyer

Of Counsel
Aaron A. Foosaner
Vicki J. Junod
Robert L. Seeley

March 8, 2004.

**VIA CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED,**
**REGULAR U.S. MAIL, AND FACSIMILE**
**#7106 4575 1292 6392 5116**
**(386)935-3453**

RECEIVED MA~ ~ ~

RECEIVED MAR 1 2 2004 BY:

Mr. Carter Morgan
The National Arbitration Council, Inc.
P.O. Box 234
O'Brien, Florida 32071-0234

RE:     **Ben Almazar v. Honolulu Federal Credit Union**
        Reference No.: 4820002780010571

Dear Mr. Morgan:

This firm has been retained by the Honolulu Federal Credit Union ("HFCU") regarding a series of demands for arbitration made against it by the National Arbitration Forum ("NAF") and HFCU's borrower, Mr. Ben Almazar.

Pursuant to §682.02, *Florida Statutes*, an agreement to arbitrators is only enforceable if it is in writing and signed by the parties to be bound.

There is absolutely no agreement between HFCU and Mr. Almazar to submit their dispute to arbitration, let alone arbitration before the "National Arbitration Council, Inc." ("NAC"), which is an arbitration forum that I have not heard of in my practice.

NAF does not have jurisdiction over this matter. HFCU demands that you immediately cease and desist your attempts to exercise jurisdiction over this matter, and acknowledge that you have terminated any attempt to engage in these proceedings in writing. If your acknowledgment is not delivered to my office by the close of business Thursday, March 11,

*Exhibit D-2*

<u>2004</u>, we will bring an action in Martin County, Florida, Circuit Court, to enjoin the arbitration pursuant to §682.03(4), *Florida Statutes*. Additionally, I have been instructed to demand that the NAC, and its principals, be held liable for HFCU's attorney's fees and costs in bringing this action.

Please be advised and understand that there is <u>no arbitration agreement between the parties.</u> Therefore, any award rendered by you will be void and unenforceable.

GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

Michael J. McCluskey, Esq.

MJM/lvs

cc:    Ben Almazar
       P.O. Box 20043
       Castro Valley, CA 94546-8043
       Via Certified Mail #7106 4575 1292 6392 5123

       Honolulu Federal Credit Union
       c/o Mr. Chris Porter, Esq.
       Brooks, Tom, Porter & Quitiquit
       841 Bishop Street, Suite 2125
       Honolulu, HI 96813
       Via Certified Mail #7106 4575 1292 6392 5130

       National Arbitration Council, Inc.
       2550 N. Federal Highway, Suite 210
       Ft. Lauderdale, FL 33305
       Via Certified Mail #7106 4575 1292 6392 5147

       Spiegel & Utrera, P.A.
       1840 S.W. 22nd Street, 4th Floor
       Miami, FL 33145
       Via Certified Mail #7106 4575 1292 6392 5154

       Mr. Charles S. Morgan
       7777 S. Chekinah Place
       O'Brien, FL 32071
       Via Certified Mail #7106 4575 1292 6392 5161

Exhibit D3

**FOX, WACKEEN, DUNGEY, SWEET, BEARD, SOBEL & McCLUSKEY, L.L.P.**

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

AUSTIN DIVISION

FILED
AUSTIN DIVISION

2002 NOV 22 PM 3: 47

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY: _____
DEPUTY

| | | |
|---|---|---|
| RUSSELL MORTLAND, et al. | § § § | |
| v. | § § | CIVIL NO. A-02-CV-435 JN |
| CONESCO FINANCE, et al. | § | |

ORDER

Before the Court is Plaintiffs' Motion for Court Order Compelling Arbitration (Clerk's Doc.
No. 4) filed 5 November 2002. No party has filed a timely response in opposition to this Motion.
Therefore, the Court will grant this Motion as unopposed pursuant to Western District of Texas Local
Rule CV-7(d).

IT IS THEREFORE ORDERED that the parties ARBITRATE this dispute before the National
Arbitration Council.

IT IS FURTHER ORDERED that the parties FILE all necessary paperwork with the National
Arbitration Council to begin the arbitration process no later than 31 December 2002.

SIGNED AND ENTERED this ___22ND___ day of November, 2002.


JAMES R. NOWLIN
CHIEF UNITED STATES DISTRICT JUDGE


5                    Exhibit E

IN THE CIRCUIT COURT FOR THE SECOND JUDICIAL CIRCUIT IN AND FOR LEON COUNTY, FLORIDA

In Re: Arbitration between

STEVEN P. RYNAR,

     Applicant,

vs.                                                     **Case No: 04-CA-2029**

MBNA America Bank, N.A.

     Respondent.

---

### FINAL JUDGMENT ON ORDER CONFIRMING ARBITRATION DECISION

THE DECISION of Charles S. Morgan, Arbitrator, of the National Arbitration Council, entered April 9, 2004, having been confirmed by order of this Court on September 27, 2004, and the findings of fact of the decision having been adopted herein,

IT IS ADJUDGED THAT:

1. Steven P. Rynar, Applicant, shall recover from MBNA America Bank, N.A., Respondent, the sum of $24,970.00, plus legal interest from the date of the decision, and court costs in the amount of $255.00, for which sums let execution issue.

DONE AND ORDERED this 30th day of September, 2004.

                        P. Kevin Davey
                        Circuit Judge

cc: MBNA America Bank, N.A. c/o Registered Agent, MBNA America Bank (Delaware) 1100 North King Street, Wilmington, Delaware 19884
H. Richard Bisbee, Esq., Attorney for Steven Rynar, 1882 Capital Circle N.E., Suite 206, Tallahassee, Florida 32308

Exhibit F

IN THE COUNTY COURT, CIVIL DIVISION, ALACHUA COUNTY, FLORIDA

CITIBANK (SOUTH DAKOTA), N.A.

        Plaintiff          CASE NO: 0104 CC 1918

VS.

CRAIG H CURRY

      Defendant      /

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2049631 1 PG
2004 JUN 23 08:56 AM BK 2940 PG 1374
J. K. "BUDDY" IRBY
CLERK OF CIRCUIT COURT
ALACHUA COUNTY,FLORIDA
CLERK13  Receipt#195242

NOTICE OF VOLUNTARY DISMISSAL

    COMES NOW the Plaintiff, by and through its undersigned

counsel, and hereby voluntarily dismisses the above-styled action

pursuant to Rule 1.420 (a)(1), of the Florida Rules of Civil

Procedure. This case is being dismissed:

   __X__ without prejudice   _____ with prejudice.

PATRICK A. CAREY, P.A.

Patrick A. Carey, Esquire, FBN 558184
Molly E. Young, Esquire FBN 0599891
Lisa J. Geiger, Esquire FBN 0543594
P.O. Box 574226
Orlando, Fl. 32857-4226
(407) 380-1333





Exhibit G-1



IN THE COUNTY COURT, CIVIL DIVISION, ALACHUA COUNTY, FLORIDA

CITIBANK (SOUTH DAKOTA), N.A.

        Plaintiff                CASE NO: 0104 CC 1918
VS.

CRAIG H CURRY

_____Defendant_____/

FINAL DISPOSITION FORM

MEANS OF FINAL DISPOSITION: Dismissed Before Hearing


                    PATRICK A. CAREY, P.A.

                    Patrick A. Carey, Esquire, FBN 558184
                    Molly E. Young, Esquire FBN 0599891
                    Lisa J. Geiger, Esquire FBN 0543594
                    P.O. Box 574226
                    Orlando, Fl. 32857-4226
                    (407) 380-1333

2004 JUN 21 AM 10: 09
JK "J.JD7" IRBY
CLERK OF COURTS
ALACHUA COUNTY FL.

FILED
CK 57

Exhibit G-2



Case 2004 CC 001918



CENTER FOR JUSTICE
DEMOCRACY
CJ&D

HOME  ISSUES  PRESS ROOM  LIBRARY  MEMBERS  DONATIONS  ABOUT CJ&D



## Breaking News

### N.C. Ruling One Step Forward for Borrowers
*Charlotte Observer*
March 3, 2005

In the latest backlash against companies that require consumer disputes to go to arbitration, an N.C. judge has struck down an arbitration clause in a lawsuit against a Citigroup Inc. unit.

Durham County Judge Ronald Stephens has ruled that an arbitration clause used by lender CitiFinancial Services Inc. is "unconscionable" and "unenforceable." The judge cited excessive fees, a loser-pays provision and restrictions on class-action claims in the ruling.

The judge's order could allow two N.C. women to move forward in state civil court with a lawsuit alleging deceptive lending practices against CitiFinancial, attorneys for the women said Tuesday. If the case is allowed to proceed as a class-action, it could involve as many as 25,000 N.C. borrowers, the attorneys said.

Attorney John Alan Jones said it was the first ruling in the state he was aware of that struck down an arbitration clause for being "unconscionable," meaning it is unfair. The case could set a precedent allowing judges to say other arbitration clauses are unfair, said Jones, of Martin & Jones in Raleigh, who is working with attorney Christopher Olson on the case.

CitiFinancial has appealed the ruling, which was handed down in late January, spokeswoman Anita Gupta said Tuesday.

**For a copy of the complete article, please contact CJ&D.**

Center for Justice and Democracy
80 Broad St.
Suite 1600
New York, NY 10004
centerjd@centerjd.org
212.267.2801
Fax: 212.764.4298

Exhibit H

Membership or subscription inquiries:

VersusLaw Research Database                       Page 1 of 3
Case 3:04-cv-01205-TJC-MCR  Document 26  Filed 03/05/05  Page 33 of 35 PageID 146
Bellsouth Mobility LLC v. Christopher, 819 So.2d 171 (Fla.App. Dist.4 05/08/2002)

[1]     Florida Court of Appeals

[2]     CASE No. 4D01-2485

[3]     819 So.2d 171, 2002.FL.0001756 <http://www.versuslaw.com>

[4]     May 08, 2002

[5]     **BELLSOUTH MOBILITY LLC, APPELLANT,**
v.
**DANIEL J. CHRISTOPHER, ON BEHALF OF HIMSELF AND A CLASS OF SIMILARLY SITUATED PERSONS, APPELLEE.**

[6]     Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Patti Englander Henning, Judge; L.T. Case No. 00-17077 03.

[7]     John R. Hargrove and W. Kent Brown of Heinrich Gordon Hargrove Weihe & James, P.A., Fort Lauderdale, for appellant. Lawrence S. Klitzman of Law Offices of Lawrence S. Klitzman, P.A., Coconut Grove; Jonah Orlofsky of Law Offices of Jonah Orlofsky, and David Schachman of Law Offices of David Schachman, Chicago, Illinois, for appellee.

[8]     The opinion of the court was delivered by: Polen, C.J.

[9]     Bellsouth Mobility LLC ("Bellsouth") appeals from a non-final order denying its motion to dismiss or compel arbitration. We reverse.

[10]    Daniel Christopher filed an action seeking class certification to challenge Bellsouth's allegedly overcharging customers for wireless telephone service. Pursuant to the standard form contract at issue, Bellsouth and its subscriber agreed to

[11]    USE THEIR BEST EFFORTS TO SETTLE ANY DISPUTE OR CLAIM ARISING FROM OR RELATING TO THIS AGREEMENT. TO ACCOMPLISH THIS, THEY SHALL NEGOTIATE WITH EACH OTHER IN GOOD FAITH. IF COMPANY AND CUSTOMER DO NOT REACH AGREEMENT WITHIN 30 DAYS, INSTEAD OF SUING IN COURT, COMPANY AND CUSTOMER AGREE TO ARBITRATE ANY AND ALL DISPUTES AND CLAIMS (INCLUDING BUT NOT LIMITED TO CLAIMS BASED ON OR ARISING FROM AN ALLEGED TORT) ARISING OUT OF OR RELATING TO THIS AGREEMENT . . . .

[12]    The contract also provided that the arbitrator could not award punitive damages and limited recovery by

Exhibit I-1   3/4/2005

the customer to actual damages. It further precluded class action relief.

[13]  Bellsouth moved to dismiss the suit and compel arbitration. The court denied Bellsouth's motion on the ground that the arbitration provision was unconscionable because, among other reasons, Christopher had no true ability to bargain, it was not practical for him to seek another provider of services, and it prevented Christopher from seeking punitive damages, injunctive or declaratory relief, or class relief. Other than the contract at issue, no evidence was presented to support these findings.

[14]  Although it is undisputed that this action is subject to the arbitration provision of the contract at issue, Bellsouth disputes that the provision is unconscionable. Courts may properly decline to enforce a contract on the ground that it is procedurally and substantively unconscionable. Powertel, Inc. v. Bexley, 743 So. 2d 570 (Fla. 1st DCA 1999), rev. den., 763 So. 2d 1044 (Fla. 2000). Procedural unconscionability "relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." Id. at 574. A court might find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices." Id. (citation omitted); see also Kohl v. Bay Colony Club Condominium, Inc., 398 So. 2d 865, 868 (Fla. 4th DCA)("Under the `procedural' rubric come those factors bearing upon . . . the `real and voluntary meeting of the minds' of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question.")(citation omitted), rev. den., 408 So. 2d 1094 (Fla. 1981). In contrast, substantive unconscionability focuses on the agreement itself and looks to whether the terms of the contract are unreasonable and unfair. Powertel, 743 So. 2d at 574 (citation omitted).

[15]  The contract on its face supports that the arbitration clause is, at a minimum, substantively unconscionable because it requires customers to give up many specific legal remedies. For instance, it expressly limits Bellsouth's liability to actual damages, even if its conduct rises to the level of outrageousness required to assess punitive damages. It also expressly removes Bellsouth's exposure to a class action suit which, in this case, may be warranted due to the numerosity of the small claims asserted, the common questions of law and fact raised by the claims, the typicality of the claims, and Christopher's status as a fair representative of the class. See Fla. R. Civ. P. 1.220(a) (discussing the prerequisites to class representation). Moreover, the substance of the arbitration provision seems unduly unfair. Although customers are bound to arbitration, Bellsouth still has the option of pursuing court action in some instances, including the collection of a debt. In short, the clause gives Bellsouth an unfair advantage.

[16]  We are precluded from affirming, however, because there was no evidence presented as to whether Christopher bargained for this provision and knowingly gave up these rights. There likewise was no evidence to support the trial court's findings as to unavailability, or difficulty in obtaining, competing services, or transferring phone numbers, equipment and so on. The trial court made determinations which, although they seem to make sense, are not supported by record evidence. We hold an evidentiary hearing is, thus, required.

[17]  REVERSED AND REMANDED for an evidentiary hearing.

[18]  STONE and GROSS, JJ., concur.

Exhibit I-2                    3/4/2005

[1]     IN THE DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA FOURTH DISTRICT
        JANUARY TERM 2005

[2]     CASE No. 4D04-2924

[3]     2005.FL.0000778< http://www.versuslaw.com>

[4]     March 2, 2005

[5]     **BELLSOUTH MOBILITY LLC, APPELLANT,**
        v.
        **DANIEL J. CHRISTOPHER, ON BEHALF OF HIMSELF AND A CLASS OF SIMILARLY
        SITUATED PERSONS, APPELLEE.**

[6]     Appeal of a non-final order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County;
        Patti Englander Henning, Judge; L.T. Case No. CACE 00-17077 03.

[7]     John R. Hargrove, Bruce A. Weihe of Gordon, Hargrove & James, P.A., Ft. Lauderdale, and Roman P.
        Wuller and Robert J. Wagner of Thompson Coburn, Llp, St. Louis, Missouri, for appellant.

[8]     Lawrence S. Klitzman of the Law Offices of Lawrence S. Klitzman, P.A., Weston, and the Law Offices of
        Jonah Orlofsky, P.A., Chicago, Illinois, for appellee.

[9]     Per curiam.

[10]    We affirm the non-final order of the trial court approving a limited class action against BellSouth, where
        Christopher is claiming on behalf of himself and other Florida consumers similarly situated that BellSouth
        improperly imposed a $3.50 per month "Roamer Admin Fee" (RAF) for calls made outside the BellSouth
        area. These proceedings occurred following our remand in BellSouth Mobility LLC v. Christopher, 819
        So. 2d 171 (Fla. 4th DCA 2002).

[11]    We have reviewed the trial court's detailed findings of fact an conclusions of law in granting class
        certification. We hold the trial court properly considered the requirements of Florida Rule of Civil
        Procedure 1.220(b)(3), and the applicable case law, in approving the class action. Finding no error, we
        affirm.

[12]    POLEN, KLEIN and SHAHOOD, JJ., concur.

Exhibit I-3     3/4/2005